So next case for argument is Newell versus New, Mr. Howard Mr. Howard is here, he'll be taking a few moments of our side. This case arose in the Western Division for the Northern District of Illinois and is based on a section 1983 claim brought by my client, Jan Newell, and alleges deliberate indifference. At the outset, there were multiple health care defendants and some prison officials who were named defendants. At this point, there is only one remaining defendant, Dr. Lawrence Newell. Dr. Newell brought a motion for summary judgment, which was granted, from which this appeal is taken. At the outset, what we're here before the Court today to argue is that there is indeed a material question of fact for a fact finder to decide. Specifically, Jan Newell's record and the evidence that he's produced shows that his Dr. Newell's deposition testimony supports the idea that he was aware of these monthly catheter changes, that he was responsible for day-to-day care of patients, and that it was his responsibility to authorize prisoners to be allowed to go off-site from the prison to go visit specialists who were properly equipped to handle these medical needs. I'd also like to paraphrase Estelle B. Gamble, which underlies this Eighth Amendment claim. What we have is that there's more than a proscription of barbaric punishment, and what the Eighth Amendment claims. If I could just cut to the chase here, counsel, the real issue here is whether there's any evidence that this doctor, Dr. Newell, is personally responsible for not changing the catheter monthly as was required. We don't allege, Your Honor, that he was personally responsible for changing the catheter. What we do allege is that he had oversight and authority to order the catheter changes be done. Well, he did order that the catheter changes be done monthly, and to the extent that they were not, you have to provide some evidence that he was responsible for that not being done. He can't be liable just as a supervisor of the health unit. The evidence is that the nurses were responsible for following the doctor's orders, right? That is correct, Your Honor, but we're not stating that he has the authority to order that those changes be done. So I guess the analogy I would make in that argument is that, as an attorney, I need to be responsible for court filings being done on time. And if I were to say, well, an assistant or a paralegal needs to ensure that. That's a negligence argument. We're not in the domain of negligence here. This is a claim of deliberate indifference. Yes, Your Honor. Right. So you have to prove that he knew that the catheters were not being changed on schedule and that he was responsible for that not being done, for not rectifying that situation. Yes, Your Honor. And that's what the district judge said, there was insufficient evidence of both of those issues, because you have to establish his personal liability. We respectfully disagree. We believe that he did have subjective awareness and that Mr. Newell alleged in his deposition testimony that he repeatedly told Dr. Newell and others that his catheter wasn't being changed in a timely manner. Dr. Newell also reviewed regular reports that came back from off-site specialists indicating that the catheter needed to be changed. So I think we have a pattern of conduct, which indicates that Dr. Newell was aware that the catheter needed to be changed, that my client wasn't having the catheter changes done, and though he could say, well, I ordered it. Was Newell, did he have his own doctor, so to speak, or was there someone on the medical staff, a doctor? Are there other doctors, or not just Newell, presumably? Over the course of Mr. Newell's stay at the prison, multiple doctors oversaw his care. Dr. Newell is a central figure in that care in that he was both a staff physician and that at some point in 2005 he was... But if Newell was being treated by another doctor, why wouldn't, if some doctor was assigned to be Newell's doctor, why wouldn't Newell complain to that person rather than to the top guy? Well, I believe, first of all, Your Honor, that he did complain to other people, other doctors and nurses that... And what did they do? The record shows that the catheter wasn't changed. So why isn't he suing them? Well, he did, Your Honor, and... Is he suing other doctors or just nurses? There were other doctors, a physician's assistant, and I believe also the warden and somebody else at the prison who was not a health care professional were also suing. So they're all defendants? They were, Your Honor, but they were dismissed or... Pardon? They were, but the... What happened to them? They were dismissed from the case voluntarily. My client abandoned his claims against him. Why? We felt that there wasn't enough evidence to show that they were, indeed, liable for deliberate indifference. Did you take their depositions? Their depositions were taken, yes, Your Honor. Do we have any deposition testimony or other evidence to demonstrate who was responsible for scheduling these monthly visits to have the catheter changed? Well, therein lies the crux of the situation, Your Honor, is that Wexford Health Care has a somewhat decentralized health care regime at the prison. So when you look at the deposition testimony as a whole, it's hard to really pinpoint, and nobody really says who's responsible for what. The only... Well, was anybody asked? Sure, but... So what were the answers? I believe Dr. LaMare, for instance, who was a defendant, indicated that he would report to Dr. New. That he was what? That he would report to Dr. New. That doesn't tell us who's responsible for scheduling these monthly catheter changes. That's what the crux of the claim is, that he was supposed to be getting monthly catheter changes. He didn't get them. pain and suffering, and that Dr. New was deliberately indifferent to that. But that presupposes that Dr. New was responsible for scheduling these. Well, to that point, Your Honor, he was the one who signed off on off-site consultation forms and made the order. Well, right, but that's neither here nor there, as far as this claim is concerned. The fact that he had authority to authorize this inmate to be taken off ground for medical care doesn't prove anything. What we need to know is whether he was responsible for scheduling the monthly catheter changes and failed to do so with knowledge and deliberate indifference. I can't state that there was a written schedule that would be produced at the prison. What I do know from reviewing the evidence is that Dr. New, I see that I'm out of time, if you'd like me to continue. Well, a question was asked to you, presumably an answer was desired, right? Sure, Your Honor. As I said, I don't think a schedule, I'm not aware of a schedule for monthly catheter changes being written or produced. Who's responsible for that, is my question. I would submit to the court that based on the evidence available in the record, Dr. New is. What evidence demonstrates that? That both. Is there some, you know, job description team of responsibility, you know, patient protocol in the health unit that establishes that? Or testimony, somebody's testimony? Based on these reports, Your Honor. What reports? The off-site consultation reports recommending the monthly changes. We know that, and he knew that, and he actually ordered that. But what does the evidence say about where the responsibility rests for actually scheduling these on a monthly basis? I don't know that we have a smoking gun like that that indicates. But do we have anything? I'm not sure that we do, Your Honor. Thank you. Okay, thank you, Mr. Howard. I mean, Mr. DiVerti, sorry. Mr. Howard? Will it please the court, my name is William Howard. I have two minutes to add to the oral argument. Two questions were raised. I think Dr. New is responsible to see that it's done. I think he is responsible. And although there is no protocol to say who does it, I think the buck stops with him. Well, that's an assertion. What's the evidence for that? Pardon? That's just an assertion. What is the evidence for that? That he's the head of the whole division. He's the primary person that reviews. How many physicians are there? He was treated by four or five physicians. No, how many are there in the medical unit of the prison? I would guess six, seven. And he was treated by various ones over the time period. And so, for example, he went into Dr. Lemire one time, and he had a UTI. So Dr. Lemire treated the UTI. He would go into another doctor a year later, had a severe UTI or some problems, and they would treat it. And the combination of all of these shows the deliberate indifference that they had for him when you go up a step and look at Dr. New. Everybody down in the trenches were just treating him as they would come in. There's a hospital call, he comes in, he's treated. And the University of Illinois Circle Campus said that they were upset that he was being treated with so many antibiotics. That's not what should be done. They should change the catheter more so that he doesn't have these. How do you distinguish between malpractice and deliberate indifference on the part of New? Maybe New isn't a very good supervisor. Nobody listens to him. There's a movie, 1967, a movie. Suppose he passes, suppose when he gets a complaint from New, he goes to one of the doctors or nurses and says, take care of this. But he doesn't follow up, and it's not taken care of. That would be malpractice, right? Well, I think it's deliberate indifference because it happens so often and on so many occasions with so many issues. And I was going to give an analogy. But New is an executive. He's not the treating physician of Newell, right? He was. He served in both roles. He was then promoted to the head of the department after being a treating physician. After what? After being a treating physician for a number of years, he was then promoted to the head of the department. So there was a time when he was treating Newell and then a later time when he's running the medical unit. I believe so, yes. And he did treat Newell. And he said in a deposition that he was asked, did you ever change a catheter? And he said he can't remember ever changing his catheter. It was mostly done by nurses and lower-level staff, which is a direct contradiction to the University of Illinois circle camps. He said it had to be changed by a urologist. He knew that. It had to be changed by? A urologist. The catheter had to be changed monthly by a urologist. What does he say to that? Who? New. He said, well, I saw them come in, I initialed them, but I decided to counterman it because I'm a doctor and I didn't agree with that. We asked, do you have any urology training? No. Have you ever changed a catheter? I don't think so. Did you ever change Newell's catheter? I don't think so. Well, if he's never changed a catheter, I'm not sure it would be in Newell's interest to have him practice on him. He's got no choice. He's in a wheelchair and he's incarcerated. I don't understand. I thought your complaint is that Newell delegated this to nurses rather than doing it himself. Dr. New? Yeah. Isn't that what you said? Yes, he did. He shouldn't have. But he doesn't know how to do it. But he could have sent him to UIC on a monthly basis. The buck stops with him. He's the head of the department. He could have done that. He didn't do it. He knew that our client was suffering. He had scars, antibiotic immunity, pain, suffering. He didn't do anything. Okay. Well, thank you, Mr. Howard. You're welcome. Thank you, Your Honor. Mr. Cherish? Good morning again. I'm Michael Cherish and I represent Dr. New. I don't think there's a dispute that Dr. New was actually responsible to change catheters. He said he wasn't. I don't think that there's an instance that's alleged that he improperly changed a catheter. And Dr. New, as the medical director for the health care unit at Dixon, his responsibility was to review and approve recommendations from outside consultants. In this case, with Mr. Newell, he did so in June of 2006. UIC recommended catheter changes on a monthly basis. Dr. Newell approved that. Then Mr. Newell was returned to the institution and those catheter changes were then done by other people. I believe what counsel was referring to in terms of a urologist and really their argument as to what does Dr. New know and when did he know it hinges on two issues. First, I believe there's a urology report from UIC of July 7, 2006. It's referred to as Exhibit 15. It's in plaintiff's appendix at 165 and 117. And that's the one that says he should have it changed at UIC. Dr. New clearly testified he never saw it. He says, when I see something from an outside institution, I initial it. My initials will be there. They're conspicuous. He gave examples of that in the record. We don't even know that that report was part of his prison medical records. It's clearly from UIC. But there's nothing in this record that indicates it was sent to the prison and became part of his chart. But what we do know is he didn't see it because his initials aren't on it. Also, plaintiff gives at several instances in his deposition testimony, and this is found in Plaintiff's Appendix 83 through 86, that Dr. New was present once when a catheter was changed and there was no problem, not that he did it, but that he was one of multiple people who were present when it was done once. And that on other occasions he may have remarked to Dr. Newell, my catheter hasn't been changed. Not that there was a problem, not that anything was wrong, but it just hasn't been changed. What was Dr. Newell's response? He ordered a change. That's what he did. He said, okay, change it. Because that was his responsibility in the chain of command. That's his responsibility as medical director. There is nothing in the record and there is no testimony that as medical director at Dixon during the relevant time period, he is responsible personally for the individual care of every single patient. Just like the head of staff in a hospital isn't. He explained that in his deposition where he said, I'm medical director, yes, I treat patients on occasions, but my responsibilities are primarily administrative. Referring people out for outside consults, like I did with this patient. Seeing that if something is brought to my attention, I will look into it. In this case, when something was brought to his attention, he did. He did his job and he was not deliberately indifferent. Unless there are other questions. Okay. Thank you, Mr. Chairman. So is there anything further from the planning? Mr. Gordon. Just to follow up on this issue of Dr. Newell's authority and direct relationship as a health care provider to Mr. Newell. Dr. Newell's own deposition testimony on page 97 states that he was responsible as a staff doctor for day-to-day patient care. And then when he was promoted to medical director, he also stated he continued to be responsible for patient care. But see, irresponsibility is not the same as deliberate indifference. Poor performance of executive functions. I would submit, Your Honor, this wasn't an executive function in light of the fact that Mr. Newell alleges that he had regular interactions in a health care patient context with Dr. New. But New, never having changed a catheter, is not the person to do it himself. So it's delegation. And maybe he delegates to the wrong people or he doesn't follow up and so on. But that sounds like malpractice rather than deliberate indifference. Your Honor, I would characterize it as deliberate indifference for the reason that he was repeatedly told it wasn't being changed, contrary to his orders. If that were the case, that he did regularly order the monthly changes and you were told by my client it's not happening, then he would be deliberately indifferent if he failed to take any action to follow up on that. Counsel, these other doctors who were dismissed, could you compare the amount of contact they had with the plaintiff as contrasted to Dr. New? And I'm not talking about when he was the medical director. I don't know if I can give you percentages, Your Honor. Well, he was his doctor for a while, the on-site doctor, right? Correct. Attending physician. And then there was a series of others after he became the medical director. That's my understanding. Yeah. So I guess I'm just trying to distinguish his contact versus the others who are no longer in the case. Not as the medical director, but in the attending capacity. Sure, Your Honor. Based on the fact that doctors were coming and going at the prison. I just meant from the depositions that you've taken. I would say there's no jarring contrast between one level of interaction between a former defendant and Dr. New. So then we're back to he's responsible in his executive capacity that you're talking about today for indifference, right? I don't believe so, Your Honor. Well, if he was indifferent, all these other doctors are dismissed, they're indifferent too? If the evidence were there to show that, we would be here arguing the same thing. Well, that's my point. What evidence we have by way of deposition shows their conduct versus Dr. New's conduct during this period of attending to the plaintiff? The evidence we're relying on is that Mr. Newell made these allegations that he regularly spoke with Dr. Newell. And the other doctors made delegations too, you're saying? Well, there were allegations, but the clearest indications were against Dr. New. Okay, thank you. Thank you. Okay, so thank you, Mr. Byrd.